UNIVERSAL OIL PRODUCTS CO. v.
STANDARD OIL CO. OF INDI-
ANA (GERMAN, Intervener).
No. 121.

District Court, W. D. Missouri, W. D.
Feb. 27, 1934.

See, also (D. C.) 1 F. Supp. 612.

R. R. Brewster, of Kansas City, Mo., and Charles H. Mayer, of St. Joseph, Mo., for plaintiff.

Cyrus Crane (of Lathrop, Crane, Reynods, Sawyer & Mersereau), of Kansas City, Mo., for defendants.

OTIS, District Judge.

The Universal Oil Products Company filed in this court August 7, 1916, its bill in equity alleging that the defendant, Standard Oil Company of Indiana, had infringed a patent belonging to the plaintiff and praying injunctive relief and damages. An answer having been filed, a master was appointed to take testimony. For a period of years the case pended before the master. Finally, before any hearing by the court and, of course, before any decree, a settlement out of court was effected between the parties. Thereupon the plaintiff sought to dismiss its bill here.

Mr. Charles W. German was one of the attorneys for the plaintiff. Before any order of dismissal was made, and none has been made, he filed in the case what was styled an "intervening petition," the general purpose of which was to obtain an order or decree of court requiring the plaintiff, before final order of dismissal, to compensate the intervener for his legal services. It was attacked by a motion to dismiss. That motion was overruled by the judge of this court, Honorable Albert L. Reeves, before whom the case was then pending. The plaintiff was required to and did answer. The issues made by the intervening petition and the answer were set for trial. Before the trial date Judge Reeves disqualified and the writer of this opinion was designated by the Senior Circuit Judge to take over the case and to proceed with it. The trial date was reset. Shortly before that date was reached Mr. German filed a second amended intervening bill which the plaintiff has moved to strike.

The motion to strike has been treated by the parties as a motion to dismiss and it will be so considered here. The prime question raised by this motion is whether the claim of an attorney for compensation rendered a client in a given case, where the client is the plaintiff, who has settled with the defendant out of court and before judgment, may be enforced in the manner here attempted, that is, by an intervening bill in the case itself? Counsel for Mr. German contend that it may be so enforced and that it might be enforced

upon a mere motion in the case. It is contended, on the other hand, by counsel for the plaintiff, that such a claim can be enforced only by an independent suit at law or in equity.

■■ I consider then in what manner under the law an attorney may enforce as against his client a claim for compensation for legal services rendered in a case begun in the courts, partially prosecuted, and settled between the parties before final judgment or decree? That he may enforce it by an independent suit for breach of express or implied contract of course is certain. That he may enforce it by an independent suit in equity to foreclose an attorney's lien if he has such a lien also is certain. That the law gives him these good and generally sufficient remedies none questions. Does he have also a remedy in the very case in which services have been rendered and, if so, of what character is it and under what circumstances may it be secured?

### The Attorney's Lien Statute.

1. In support of the contention that there is such an alternative remedy, counsel first relies on the Missouri attorney's lien statute. I proceed therefore to a consideration of that statute. It is section 11716, R. S. Mo. 1929 (Mo. St. Ann. § 11716), and reads: "The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

It is to be observed at once that this statute, although creating an attorney's lien, makes no provision whatever for its enforcement, nor does any other Missouri statute fill up this omission. If then there is a remedy for the enforcement of the attorney's lien, that remedy must be found in the general law or in established principles of equity.

■ Laying aside for the time those judicial opinions which interpret this and similar attorney's lien statutes, and looking now only at the language used in the statute, we perceive that it gives an attorney a lien only *upon* one thing; that is, the "client's cause of action." It provides indeed that the lien so given shall *attach* to a verdict, report, decision, or judgment in the client's favor, but it is still a lien only *upon* the cause of action. It was quite logical, although perhaps unnecessary, to provide that the lien should attach to a verdict, report, decision, or judgment, for each of these is the immediate progeny of the cause of action, or, more accurately, each of these is the cause of action in a metamorphosed and perfected state. That is true too of the proceeds of a verdict, report, decision, or judgment to which also the lien attaches. The lien does not *attach* to any other thing than those specified, for expressio unius exclusio alterius est. The lien is only *upon* the cause of action and it *attaches* only to the objects expressly named.

There is only one reference in the statute to a settlement between the parties. Although the context shows that the possibility of a settlement before or after judgment and the effect thereof upon the security intended to be given the attorney were present in the minds of the lawmakers and to some extent provided for in the same sentence as that creating the lien and declaring the objects to which it shall attach, still neither an agreement of settlement nor the proceeds thereof are included among the objects to which the lien will attach.

The one reference to a settlement is this: "(The lien upon the client's cause of action) cannot be affected by any settlement between the parties before or after judgment." If it is not affected, then it is neither enlarged nor lessened. It is still upon the client's cause of action and that only. It still attaches to a verdict, report, decision, judgment, and their proceeds and to them only.

■■ Something, however, was intended to be accomplished by the provision last quoted. It was assumed by the lawmakers that except for that provision the attorney's lien would be affected by, for example, a settlement before judgment. The assumption was justified by the doctrine that a settlement extinguishes a cause of action, although, perhaps more accurately it should be said, when there has been a settlement of a cause of action the cause of action merges in the agreement of settlement. What the lawmakers intended to make clear was that the lien given upon the cause of action would continue although the cause of action was merged in an agreement of settlement.

■ A cause of action is a right which the law gives and which the law will enforce, a right to recover something from another. There are two ways in which he who has such a right may obtain satisfaction from him obligated. One of these is through the courts.

The other is by private negotiation with the party from whom satisfaction is demanded. He who has the right may seek satisfaction in either of these ways or in both at the same time. If he has called to his aid an attorney and that attorney institutes a lawsuit to enforce the client's right, then from the commencement of the action the attorney has a lien upon the cause of action. The lien is upon the cause of action; that is, the right of the client under the law to recover something from his adversary. The lien is not restricted to the cause of action in so far only as it may be enforced in the courts, but is upon the cause of action without any such limitation; that is to say, it is upon the cause of action, whether prosecuted in the courts or by private negotiation out of court. However, there is this distinction to be drawn: So far as the cause of action is asserted in the courts it is subject to the jurisdiction of the courts. Any interest in the cause of action to the extent that the cause of action is in the courts (and a lien upon a cause of action is an interest in it) possibly also is subject to the jurisdiction of the courts and possibly is determinable and may be enforced by the courts in the same case in which the cause of action is prosecuted. But if the cause of action is prosecuted by private negotiation out of court, then the court has no jurisdiction whatever over such prosecution, the incidents thereof, the interest of the plaintiff or any other therein. No court can compel, prevent, or condition such a prosecution. Since the court can have no jurisdiction over the prosecution of a cause of action by private negotiation, it cannot have any jurisdiction to enforce an attorney's lien upon a cause of action so prosecuted.

The situation just described is quite comparable with this: B has given his promissory note in the amount of $1,000 to A. It is due and unpaid. A has a cause of action against B. He employs C as his attorney and agrees to pay him as compensation for his services 25 per cent. of whatever is recovered. Thereupon C brings suits for A against B in two courts at the same time, in the circuit court of X county and in the circuit court of Y county. Two prosecutions are thus instituted, although there is only one cause of action, and upon that cause of action C has an attorney's lien. If A obtains a judgment in the circuit court of X county to which C's lien would immediately attach, no one would urge that the circuit court of Y county has any jurisdiction whatever to enforce that lien. If there is jurisdiction in any court summarily to enforce the lien, it is in the circuit court

of X county and not in the circuit court of Y county. The situation would not be different because the cause of action has been prosecuted, not in the circuit court of X county, but by private negotiation or before a non-official arbitrator selected by the parties. In either case, the prosecution which has resulted in a disposition of the controversy has never been conducted and neither it nor its incidents ever have been within the jurisdiction of the circuit court of Y county.

We may suppose another case which equally makes clear the conclusion that a court does not have the power summarily to enforce an attorney's lien where a settlement has been made outside of court and before judgment.

Assume there is no statutory attorney's lien. An attorney is employed by a client who has a cause of action against another for specific performance of a contract to sell land. The client agrees to pay his attorney for his services the sum of $1,000 and gives him a demand note for that amount, secured by *a contract lien* on his cause of action and whatever is recovered through its prosecution. A decree for specific performance is obtained. The defendant, complying with the decree, executes the deed to the land in question. Now the attorney has a lien on the land to secure the note and he demands payment of the note. He has a cause of action now against his client on the note and to foreclose his lien. Can he proceed against his client by intervention or by motion or in any other way? If not, why not? The simple answer is: Because the attorney's cause of action is wholly distinct from the client's cause of action. One who goes into court to sue another subjects himself to being sued by that other in a lawful counterclaim, but he certainly does not subject himself to suits against himself without lawful service of process upon him by all who may have causes of action against him. What difference does it make that this attorney has a contract lien instead of a statutory lien? The remedies available for the enforcement of a lien, whether arising out of contract or out of statute, if the liens are otherwise identical, cannot be different unless in the case of the statutory lien some special statutory remedy has been provided.

I cannot find then in the language of the Missouri attorney's lien statute nor in the character of the lien therein created any support whatever for the contention that it provides a lien enforceable summarily by an attorney for a plaintiff in a case in which the plaintiff outside of court has entered into an

agreement of settlement with the defendant and has received the proceeds of that settlement.

## The Missouri Cases.

2. I turn now to the decisions of the Missouri courts which interpret the attorney's lien statute of this state and which discuss what remedies are available for the enforcement of the attorney's lien. It may be said at once that there is not one of them in which it is ruled or asserted even by way of dictum that an attorney for a plaintiff may have summary enforcement of his lien against the plaintiff in the plaintiff's case against the defendant where the parties have entered into an agreement of settlement out of court. But counsel point to the case of State ex rel. Anderson v. Roehrig, 320 Mo. 870, 8 S. W. (2d) 998, 1000, and urge that the opinion and decision in that case support in principle such a theory. It seems to me to give it no support whatever.

All that was held in State ex rel. Anderson v. Roehrig was that in a case where a plaintiff has obtained a judgment against a defendant, and where the amount of that judgment has been paid into court by the defendant, the plaintiff's attorney may, by motion in the case, assert and have determined his lien and have the lien enforced against the amount paid into court. That a court of general jurisdiction has authority, "in such circumstances, to fix an attorney's fee and make the necessary orders to enforce its payment, is incident," it is said in the opinion in that case, *"to the control it has over its own judgment and records."* There is no further discussion in the opinion of the source of the asserted jurisdiction.

It is impossible to see in this decision and in the reasons given for it any support for the contention that a court of general jurisdiction may enforce an attorney's lien in a case *in which there has been no judgment* and in which nothing has been paid into court on account of any judgment. A jurisdiction which depends upon the fact that there has been a judgment certainly cannot exist where there has been none.

It is true that the doctrine in the Anderson opinion is not limited to a case in which the amount of the judgment has been paid into court. The whole amount may have been paid by the defendant to the plaintiff and the plaintiff may have satisfied the judgment. In that situation the plaintiff's attorney may move the court to set aside the satisfaction pro tanto and to award execution to the extent of his lien. That was ruled in Young

v. Renshaw, 102 Mo. App. 173, 76 S. W. 701, cited and quoted with approval in State ex rel. Anderson v. Roehrig, 320 Mo. loc. cit. 876, 8 S.W.(2d) 998. This jurisdiction of the court also arises from the control it has over its *judgment.* It has authority to see to it that the judgment is paid to those who are entitled to be paid, including the attorney who has an interest by virtue of his lien in the judgment. Obviously, however, a jurisdiction which is bottomed on the control which a court has over its judgments does not extend to nor by analogy support a jurisdiction over an agreement of settlement between the parties made outside of court and before any judgment is rendered. Moreover, even if a settlement were made after judgment and a remedy was available to the attorney through the court's control of its judgment, no remedy would be available against the attorney's client by that method. The control of the court over its judgment against a defendant never could extend to a rendition of judgment against the plaintiff.

I do not overlook the point that an order of dismissal in a case in a sense is a judgment in the case. Such a judgment, like any other, is subject to the control of the court; but an attorney's lien certainly does not attach to such a judgment, for it is not a judgment in favor of the plaintiff nor one which has any pecuniary value to the plaintiff. It is a judgment in favor of the defendant.

The Anderson Case was not one in which settlement was made between the parties before judgment. Gillham v. Railway, 282 Mo. 118, 221 S. W. 1, the one other Missouri case to which I make reference, was such a case. There the attorney for the plaintiff sought to enforce his lien, not against the plaintiff, but against the defendant, and he undertook to do that by moving to set aside an entry of dismissal which had been made, for the reinstatement of the case and for judgment in the case against the defendants for the attorney's fee claimed. The Supreme Court, in its decision in the case, said in effect that where a settlement was made before judgment, the attorney could not recover even against the defendant by summary procedure in the principal case, but that his remedy was either by an independent action at law for the value of the lien of which he was deforced or by an independent suit in equity to foreclose his lien. The Anderson Case is to be read with this case. The opinion in each was written by the same judge. The two together declare the law of Missouri to be that an attorney for a plaintiff may by motion

in the plaintiff's case have determined and have judgment for the amount of his fee, and have it enforced against a fund paid into court by the defendant, or if the judgment has been paid to the plaintiff, then he may have that judgment set aside and execution pro tanto awarded to him against the defendant; but if the controversy between the parties has been settled before judgment, then the attorney can have no relief in the case, even against the defendant. He must resort to an independent action.

### Cases from Other Jurisdictions.

3. Not only do the Missouri cases lend no support to the contention made here, but also it must be said that there is no case in any jurisdiction which lends any support to it. The cases in other jurisdictions most relied on are Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492, 66 N. E. 395, 396; Byram v. Miner (C. C. A. 8) 47 F.(2d) 112; Middlestadt v. City of Minneapolis, Minnesota, 147 Minn. 186, 179 N. W. 890, 892; Davis v. Great Northern R. R. Co., 128 Minn. 354, 151 N. W. 128, 129. None of them supports the contention made.

In Fischer-Hansen v. R. R. the attorney for plaintiff sought to enforce his lien, not against the plaintiff, but against the defendant. He sought to enforce it, not by intervention or motion in the original case, but by an independent proceeding. The case came to the Court of Appeals of New York from a judgment on demurrer. The argument for the demurrer was that an independent proceeding was not the proper remedy for enforcement of an attorney's lien. The only question decided was whether an independent proceeding was proper. It was held proper. There is dictum in the opinion that a summary proceeding under the New York attorney's lien statute also would have been proper, but that dictum is based upon the express language of the New York statute to the effect that "the court upon the petition of the client or attorney may determine and enforce the lien." Laws 1899, c. 61, p. 80, § 1. The Missouri statute, which otherwise is identical with the New York statute, omits the express provision which alone supports the dictum in the New York case.

Byram v. Miner is no more in point than is Fischer-Hansen v. R. R. In the first place, the question of the propriety of a summary procedure in behalf of an attorney in his client's case is not discussed in the opinion and was in no way involved in the decision. In the second place (certainly this is the reason the question was not discussed and was not involved), the Minnesota attorney's lien statute (General Statutes of Minnesota 1923, § 5695) expressly provides that the lien there created "may be established, and the amount thereof determined, by the court, summarily, in the action or proceeding, on the application of the lien claimant. * * * *"

The cases of Davis v. Great Northern Ry. Co. and Middlestadt v. City of Minneapolis, Minnesota, may be considered together. The latter adds nothing to the former and need not specifically be reviewed. The attorney's lien statute which was in force when Byram v. Miner was decided had not yet been enacted when these cases were decided. The attorney's lien statute then in force in Minnesota (section 4955, General Statutes Minn. 1913) did not provide for a summary proceeding in the client's case to enforce the attorney's lien. That statute, like the Missouri statute, made no special provision for the enforcement of the lien created by it. It merely gave to the attorney a lien "upon the cause of action from the time of the service of the summons therein."

The Davis Case was this: One Haynes had brought a suit for damages for personal injuries against the Great Northern Railroad Company. Davis was his attorney. Outside of court the parties settled the controversy and a certain sum was paid to Haynes. Davis then brought an independent action against the railroad company to recover for the value of his services to Haynes. He recovered judgment. The assignment of error upon which the case went to the Supreme Court of Minnesota was that the attorney could not maintain an independent action to recover his compensation or to enforce a lien, but was confined to a proceeding in the original action. All that was decided by the court was that an independent action against the defendant in the original case was a proper procedure. The court said: "The statute creating the lien under which plaintiffs claim does not prescribe a remedy for its enforcement, and we think, and so hold, that the attorney in such case may elect whether to proceed by independent action, or in the original suit." But it is quite clear that the dictum that the attorney might proceed "in the original suit" means only that he might proceed by prosecution of his client's cause of action to a judgment where the settlement by the parties was made for the purpose of cheating and defrauding the attorney. It does not mean that he might have a summary determination and enforcement of his lien in the original proceeding.

### The Officer of the Court Theory.

4. A second contention which is made by counsel for Mr. German is that wholly without regard to the statutory attorney's lien and what remedies may be used to enforce that lien, there is jurisdiction in any court to protect the interests of an attorney as an officer of the court and, therefore, to make such orders in any case in which he is employed as will secure for him from his client payment of compensation owing to him. If it is meant by this contention that a court has power to forbid a party to a lawsuit settling his controversy with his adversary out of court unless he pays his attorney what is owing to him, or if it is meant that a court has power to say to a party bringing a suit in court, "You cannot dismiss this case unless you pay your attorney what you owe him," then the contention has no support either in precedent or principle. No precedent has been cited supporting any such contention and I have found none. The attorney is indeed an officer of the court and entitled to the court's protection, but that he is entitled to a different procedure for the enforcement of his contracts than that to which other citizens must resort is a doctrine which does not appear ever before to have been asserted.

### Intervention in an Equity Suit.

5. I think it is unnecessary to discuss more than very briefly whether counsel for a plaintiff in a patent suit or for that matter in any suit in equity may *intervene* in that suit to enforce against the plaintiff his claim for compensation for legal services under Equity Rule 37 (28 USCA § 723). The right of intervention given by that rule (and there is no other right of intervention in the technical sense in a federal equity case) is restricted to him who has "an interest in the litigation." This phrase, "an interest in the litigation," is to be read in connection with the preceding language of the rule: "All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff." The "interest in the litigation" which will support intervention must be some legal or equitable interest in the subject of the action which a decree might or would affect. While an attorney has in Missouri a lien upon his client's cause of action and therefore in a sense an interest in the cause of action, he does not have either a legal or equitable interest in the subject of the action and his interest in the cause of action cannot be affected by any decree rendered. However, in this opinion I have chosen to consider, not whether the claimant could assert his cause of action by intervention in the technical sense, but whether by any method he could have it determined and enforced summarily in the principal case.

### The Law of the Case.

6. Finally it has been contended by counsel for Mr. German that even if it should be my conclusion that the present motion to dismiss the second amended intervening bill should be sustained, I am precluded from so ruling by the law of the case already established by an order of Judge Reeves overruling a motion to dismiss the original intervening bill. Such decisions, among others, as Plattner Implement Co. v. International Harvester Co. (C. C. A. 8) 133 F. 376, 378; Commercial Union v. American Bank (C. C. A. 2) 10 F.(2d) 937; and Hardy v. North Butte Mining Co. (C. C. A. 9) 22 F.(2d) 62, are cited.

From the first of the cited cases, a decision of the Circuit Court of Appeals for the Eighth Circuit, the opinion in which was written by Judge Walter H. Sanborn and which (for both reasons) is especially authoritative and persuasive I quote language setting out the rule relied on: "That rule is 'that the various judges who sit in the same court should not attempt to overrule the decisions of each other * * * except for the most cogent reasons.' * * * The rule * * * is a rule of comity and of necessity. * * * By its terms it permits the 'most cogent reasons,' such as a certainty that a previous ruling was erroneous * * * to present exceptions to it. But the rule itself, and a careful observance of it, are essential to the prevention of unseemly conflicts, to the speedy conclusion of litigation, and to the respectable administration of the law, especially in the national courts, where many judges are qualified to sit at the trials, and are frequently called upon to act in the same cases."

Before this rule can govern a decision made by a judge who succeeds another in the same case, it must appear that that decision is of the same matter decided by his predecessor and that cogent reasons are not present justifying a different decision than that made by the predecessor judge. One possible such cogent reason, said Judge Sanborn, is a certainty that the earlier ruling was erroneous. Another possible cogent reason, which undoubtedly would be sufficient to jus-

tify a departure from the rule, is a conclusion reached by the succeeding judge that the court has no jurisdiction either of the parties or the subject-matter. Unless the rule is reasonably interpreted, unless it is subject to the "cogent reasons" qualification stated by Judge Sanborn, it would reduce the succeeding judge to the character of mere automaton; it might compel him, for example, to go through the farce of the long trial of a case upon a petition which he knows states no cause of action or of which he knows the court has no jurisdiction whatever.

While this case was yet pending before Judge Reeves and before he disqualified, a motion to dismiss the original intervening bill filed by Mr. German was argued, submitted to him, and overruled. After he disqualified and the case was assigned to me, I was asked orally to consider again the same matters which had been presented to Judge Reeves. I did not do that. Then a second amended intervening bill was filed, in which, in my judgment, an entirely different cause of action is stated. It is this amended bill which is attacked by the present motion.

 Whether the court has jurisdiction of the cause of action now stated never was decided by Judge Reeves. He decided an attack made on a different bill. It may be that in support of that attack the same arguments were made as have been made in support of the present attack, and that the same arguments were made contra; it may be that the same authorities were cited for and against that motion. As he understood the law Judge Reeves applied it to that motion. So far as the law of the case was thereby established, it was to the extent only that the original bill was good as against the motion attacking it. Finality was given only to that particular decision. The arguments and reasoning and the application of precedents which led to that decision were not given sanctity and such a character of conclusiveness as that when a motion to dismiss a different bill is before a succeeding judge he is bound by them. He who would take advantage of the law of the case must not abandon that to which the law of the case attached.

 Not only does the rule have no application here for the reason that a wholly different matter than that decided by Judge Reeves is now for decision, but even if it

were the same matter the law of the case rule does not restrict a succeeding judge in passing on a question of jurisdiction. Whether a court has jurisdiction is always an open question. And the question here is one of jurisdiction, not merely one of procedure, nor merely one such as some ordinary demurrer or motion might raise. It is a question of jurisdiction. Whether an attorney's cause of action against his client for compensation for services rendered may be ingrafted on the client's cause of action against another for patent infringement obviously is a question of jurisdiction. The two causes of action are wholly distinct from and independent of one another. So far as subject-matter is concerned, the jurisdiction of the court in the original case is limited by the pleadings of the original parties and by interventions proper under Equity Rule 37 (28 USCA § 723). Any other subject-matter cannot be thrust into the case except in some way the court's jurisdiction of the new subject-matter be established. The essence of this motion is that jurisdiction of this new subject-matter does not exist.

### Conclusion.

 My conclusion is that an attorney for a plaintiff in a patent infringement suit who out of court has settled his controversy with the defendant in that suit and has asked an order of dismissal cannot, over the objection of his client, summarily proceed against him in the patent suit to collect compensation for legal services rendered in that suit, and that the court in which the patent suit is pending has no jurisdiction in that suit on intervention, petition, or motion of the attorney to determine what compensation the attorney has earned and to give judgment therefor against the plaintiff. The remedy of the attorney against his client is by an independent action at law upon contract or at equity to foreclose his attorney's lien.

### Order.

The motion of plaintiff, Universal Oil Products Company, to dismiss the second amended intervening bill of Charles W. German, having been duly considered by the court, and the court being fully advised in the premises, is by the court sustained and the bill dismissed. An exception is allowed. It is so ordered.